UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RACHEL GOODSPEED o/b/o D.L.G.,

                Plaintiff,

v.                                                  Case No. 1:14-CV-893 (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEGAL AID SOCIETY OF<br>NORTHEASTERN NEW YORK<br>  Counsel for Plaintiff<br>112 Spring Street, Suite 109<br>Saratoga Springs, NY 12866 | MARY MARTHA WITHINGTON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF GEN. COUNSEL–REGION II<br>  Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | DAVID B. MYERS, ESQ.<br>JEREMY A. LINDEN, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Rachel Goodspeed ("Plaintiff") on behalf of her child, D.L.G., against Acting Commissioner of Social Security, Carolyn W. Colvin ("Defendant" or "the Commissioner") seeking Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 13.) For the reasons set forth below, Plaintiff's motion is granted and Defendant's cross-motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

D.L.G. was born on February 5, 1999. At the time of the hearing, D.L.G. was in eighth grade. D.L.G.'s alleged impairments are attention deficit disorder, bipolar disorder, oppositional defiant disorder, and post-traumatic stress disorder.

### B. Relevant Procedural History

On November 28, 2011, Plaintiff applied for SSI on D.L.G.'s behalf. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 12, 2013, Plaintiff and D.L.G. appeared before ALJ Robert Wright. (T. 40-56.) On March 15, 2013, the ALJ issued a written decision finding D.L.G. not disabled under the Social Security Act. (T. 22-34.) On May 15, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-3.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 25-34.) First, the ALJ found that D.L.G. was an "adolescent" pursuant to 20 C.F.R. § 416.926a(g)(2) on November 28, 2011 (the date the application for benefits was filed) and on March 15, 2013 (the date the ALJ's decision was issued), having been born on February 5, 1999. (T. 25.) Second, the ALJ found that D.L.G. had not engaged in substantial gainful activity since the date the application for benefits was filed. (*Id*.) Third, the ALJ found that D.L.G. suffers from attention deficit disorder, bipolar disorder, oppositional defiant disorder,

and post-traumatic stress disorder, which are severe impairments pursuant to 20 C.F.R. § 416.924(c). (*Id.*) Fourth, the ALJ found that D.L.G. does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings"). (*Id.*) Fifth, the ALJ found that D.L.G. does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 25-34.) Sixth, and finally, the ALJ found that D.L.G. has not been disabled, as defined by the Social Security Act, since November 11, 2011, the date the application was filed. (T. 34.)

## II. THE PARTIES' BRIEFINGS ON THEIR CROSS-MOTIONS

### A. Plaintiff's Arguments

Generally, Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in finding that D.L.G.'s impairments do not meet or equal the Listings. (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in finding that D.L.G. did not have marked limitations in the areas of attending to and completing tasks, interacting and relating with others, and caring for himself. (*Id.* at 19.) Third, Plaintiff argues that the Appeals Council erred in failing to consider new and material evidence that Plaintiff submitted. (*Id.* at 20.) Fourth, and finally, Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. (*Id.* at 22.)

### B. Defendant's Arguments

Defendant makes three arguments in support of her cross-motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's finding that D.L.G.'s impairments did not meet or equal a listing. (Dkt. No. 13 at 5 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ correctly found that D.L.G.'s impairments did not functionally equal a listing. (*Id.* at 8.) Third, and finally, Defendant argues that the new evidence submitted to the Appeals Council does not warrant remand. (*Id.* at 12.)

## III. RELEVANT LEGAL STANDARDS

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or if there determination was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

4

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at \*7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in

substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the severe impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). 20 C.F.R. § 416.924(c). Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a

6

child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.   ANALYSIS

### A.   Improper Selective Consideration of Evidence

As indicated above in Part II.A. of this Decision and Order, generally Plaintiff argues that the ALJ's findings pertaining to the Listings and D.L.G.'s limitations are not supported by substantial evidence. (Dkt. No. 11 at 16-20 [Pl.'s Mem. of Law].) However, the Court is unable

7

to determine whether the ALJ's decision is supported by substantial evidence, because the Court must first find that the proper legal standard was applied; and in this case, the Court finds that it was not.

"'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.'" *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 [2d Cir. 1996]). This is a case where a remand to the Commissioner for factual determinations and application of the correct legal standards is required. *See Pratts*, 94 F.3d at 39.

It is axiomatic that a full and fair hearing in accordance with beneficent purposes of the Social Security Act requires consideration of all relevant evidence. *See Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (1982) (holding that a reviewing court must determine whether the administrative law judge adequately protected the claimant's rights by ensuring that all of the relevant facts were sufficiently developed and considered). Thus, while administrative law judges are entitled to resolve conflicts in the evidentiary record, they cannot pick and choose only evidence that supports their particular conclusions. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 [2d Cir. 1983]). In other words, an administrative law judge may not "cherry-pick" evidence that supports his or her opinion while ignoring evidence that does not. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). An ALJ's "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Ceballos v. Bowen*, 649 F. Supp. 693, 702 (S.D.N.Y. 1986) (citing *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 [2d Cir. 1984]). The

Court finds that the ALJ selectively considered evidence that supported his conclusion in his analysis.

For example, the ALJ selectively considered evidence to support a finding that D.L.G. did not have a marked limitation in his interaction with others. The ALJ found that D.L.G. is "able to adequately . . . interact with peers and adults." (T. 26.) He emphasized that D.L.G. "was also described [in an Individualized Education Plan or "IEP" report] as 'a likeable and engaging young student who enjoys relationships and ultimately wishes to please adults.'" (T. 27.) He also cited the IEP report in support of his finding that "he has no serious difficulty interacting with others, handling frustration, and coping." (T. 28.)

However, the ALJ's finding ignores nearby portions of the IEP report. One of the above quotations from the report is contained in a portion entitled "STUDENT STRENGTHS." (T. 413.) The paragraph immediately preceding the quotation reads as follows:

> [D.L.G.'s] relationships are quite strained at this time as a result of his mood dysregulation and lability. He becomes remorseful after he goes through an [sic] verbally aggressive episode. Although he has not become physically aggressive to others [he] has postured towards staff and other peers before backing down and removing himself from the situation. His feelings of self worth fluctuate as it relates [sic] to his behaviors and choices.

(*Id.*) The paragraph immediately following the quotation states that D.L.G. "needs social skills training to increase his knowledge and use of coping skills for times when he is frustrated or angry. He needs to learn to manage his mood, behavior, and impulsivity in a more structured program with built in support." (*Id.*) In determining D.L.G.'s functional limitations, the ALJ appears to cite only D.L.G.'s strengths, and ignore his weaknesses.

This example is not an isolated one. The ALJ also cites a second IEP report, which

similarly states that D.L.G. is "a likeable boy who does want to please others and follow the rules." (T. 31.) Again, however, the ALJ disregards related portions that do not support his conclusions. The paragraph immediately preceding the quoted portion states as follows:

> [D.L.G.] has had difficulty in his social interactions. Although he is a likeable boy who does try to please. He avoids activities that require cognitive effort and avoids any demands that are made of him that he does not want to do. He can be very manipulative to get his way and has become increasingly provocative and threatening as a way to avoid interactions or work and be sent home. His mood is labile and he has a high degree of anxiety that has recently become more prevalent with panic symptoms.

(T. 467.) Again, the ALJ acknowledges only the portion of the IEP report that supports his conclusion.

Furthermore, the ALJ emphasizes repeatedly in his decision that D.L.G.'s behavioral problems result from issues he faces at home, and seems to imply that D.L.G. does not have similar behavioral problems at school. (T. 22-34.) However, the ALJ fails to note D.L.G.'s disciplinary records. Those records span multiple pages, and illustrate twenty-one (21) incidents in which D.L.G. was the offender. (T. 189-95.) The incidents include insubordination, disrespectful behavior, and fighting. (*Id.*) For example, on May 14, 2012, D.L.G. punched another student in the face, told a teacher that he did it on purpose, and laughed. (T. 189.) He also told the teacher that he wanted to be suspended, and he was in fact suspended for two days. (*Id.*) On April 20, 2012, he called a teacher fat and threatened to break the windows in the school. (*Id.*) The ALJ does not mention any of D.L.G.'s behavioral incidents, but instead states that D.L.G. "has no serious difficulty interacting with others." (T. 28.)

It is apparent from the record that the ALJ has selectively considered evidence, noting only the evidence that supports his conclusion, and failing to acknowledge or address other

10

evidence. For that reason, it would be improper for the Court to determine whether substantial evidence supports the ALJ's decision, and the case must be remanded. *See Pratts*, 94 F.3d at 39.

### B. Consideration of New Evidence on Remand

Plaintiff also argues that the Appeals Council improperly disregarded new and material evidence related to the period of or before the ALJ's decision. (Dkt. No. 11 at 20-22 [Pl.'s Mem. of Law].) As Defendant correctly notes, however, a previously omitted portion of the administrative record contains a letter from the Appeals Council, which acknowledges receipt and review of the evidence. (T. 648.) The Appeals Council's letter notes that it reviewed the documents, and decided that they did not merit a change in its prior decision. Therefore, the documents in question have already been made part of the administrative record, and Plaintiff's motion is moot insofar as it attributes error to the Appeals Council's alleged failure to consider the evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that the Commissioner's determination is **VACATED**; and it is further

**ORDERED** that the matter is **REMANDED** to the Commissioner for further administrative proceedings.

Dated: March 22, 2016
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge